# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMON LOPEZ TAPIA, | Case No.: 1:17-cv-00060-LJO-JLT (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATIONS TO GRANT RESPONDENT'S MOTION TO DISMISS AND TO DENY PETITIONER'S MOTION TO AMEND AND STAY PROCEEDINGS |
| v. | |
| KELLY SANTORO, | [Docs. 11, 22] |
| Respondent. | [TWENTY-ONE DAY OBJECTION PERIOD] |

Respondent moves to dismiss the petition for violation of the statute of limitations. Petitioner moves to amend and stay proceedings in light of newly discovered evidence. The Court agrees with Respondent that the petition is untimely and will therefore recommend that Respondent's motion to dismiss be granted and the petition be dismissed with prejudice. The Court finds that a stay and amendment would be futile and will therefore recommend that Petitioner's motion be denied.

**BACKGROUND**

On January 24, 2011, a jury in the Kern County Superior Court convicted Petitioner of first degree murder. (Doc. 1 at 5.) On May 20, 2011, the state court sentenced him to a prison term of 25 years-to-life. (Doc. 1 at 5.) On June 20, 2013, the California Court of Appeal for the Fifth Appellate District rejected his direct appeal, finding no arguable issues. (Doc. 1 at 5.) The appellate court modified its decision on July 15, 2013. People v. Tapia, 2013 WL 3097179 (Cal.Ct.App. 2013). The

1

California Supreme Court denied review on September 18, 2013. He filed the instant federal habeas petition on December 19, 2016.[1]

**DISCUSSION**

I.     Procedural Grounds for Motion to Dismiss

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default). Thus, a respondent can file a motion to dismiss after the court orders a response, and the court should use Rule 4 standards to review the motion.

In this case, Respondent's motion to dismiss is based on a violation of 28 U.S.C. 2244(d)(1)'s one year limitation period. Because Respondent's motion to dismiss is similar in procedural standing to a motion to dismiss for failure to exhaust state remedies or for state procedural default and Respondent has not yet filed a formal answer, the Court will review Respondent's motion to dismiss pursuant to its authority under Rule 4.

II.     Limitation Period For Filing Petition For Writ Of Habeas Corpus

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), *cert. denied,* 118 S.Ct. 586 (1997). Thus, the instant

---

[1] Under the mailbox rule, a petitioner's pleading is deemed filed on the date of its submission to prison authorities for mailing, as opposed to the actual date of its receipt by the court clerk. Houston v. Lack, 487 U.S. 166, 276 (1988). Accordingly, for all of Petitioner's state petitions and for the instant federal petition, the Court will consider the date of signing of the petition (or the date of signing of the proof of service if no signature appears on the petition) as the earliest possible filing date and the operative date of filing under the mailbox rule for calculating the running of the statute of limitation.

petition, filed on December 19, 2016, is subject to the provisions of the AEDPA.

The AEDPA imposes a one year statute of limitations on petitioners seeking to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). In most cases, the limitations period begins running on the date that the petitioner's direct review became final. Here, the California Supreme Court denied review on September 18, 2013. (LD[2] 5.) Therefore, direct review concluded on December 17, 2013, when the ninety day period for seeking review in the United States Supreme Court expired. Barefoot v. Estelle, 463 U.S. 880, 887 (1983). The statute of limitations commenced on the following day, December 18, 2013. Absent applicable tolling, the last day to file a federal habeas petition was December 17, 2014.

III.   Statutory Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)

Under AEDPA, the statute of limitations is tolled during the time that a properly filed application for state post-conviction or other collateral review is pending in state court. 28 U.S.C. § 2244(d)(2). A properly filed application is one that complies with the applicable laws and rules governing filings, including the form of the application and time limitations. Artuz v. Bennett, 531 U.S. 4, 8 (2000). An application is pending during the time that 'a California petitioner completes a full round of [state] collateral review," so long as there is no unreasonable delay in the intervals between a lower court decision and the filing of a petition in a higher court. Delhomme v. Ramirez, 340 F. 3d 817, 819 (9th Cir. 2003), *abrogated on other grounds as recognized by* Waldrip v. Hall, 548 F. 3d 729 (9th Cir. 2008) (*per curiam*); see Evans v. Chavis, 546 U.S. 189, 193-194 (2006); Carey v. Saffold, 536 U.S. 214, 220, 222-226 (2002); Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999).

The parties do not contest that Petitioner filed three petitions for writ of habeas corpus in the state courts, as follows:

**First Petition:**
November 16, 2015: Kern County Superior Court.
February 26, 2016: Petition denied.

**Second Petition**:
March 22, 2016: California Court of Appeal, Fifth Appellate District.
July 7, 2016: Petition denied.

///

---

[2] "LD" refers to the documents lodged by Respondent with his motion.

3

**Third Petition:**
July 18, 2016: California Supreme Court.
December 14, 2016: Petition denied.

(LD 6-13.) Thus, the limitations period expired and 11 months passed before Petitioner filed his first state habeas petition. Since the first petition and the subsequent petitions were filed after the limitations period had expired, they could not toll the limitations period. Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003).

The Court notes that Petitioner filed a federal habeas petition on December 3, 2015, but the petition was denied for failure to exhaust on December 22, 2015. See Tapia v. Santoro, Case. No. 1:15-cv-01809-BAM-HC. The Supreme Court has held that a federal habeas petition cannot toll the state of limitations under § 2244(d)(2). Duncan v. Walker, 533 U.S. 167, 181 (2001). Accordingly, the instant petition was filed over two years beyond the expiration of the statute of limitations and is therefore time-barred.

IV.     Equitable Tolling

The running of the one-year limitation period under 28 U.S.C. § 2244(d) is subject to equitable tolling in appropriate cases. See Holland v. Florida, 560 U.S. 631, 651-652 (2010); Calderon v. United States Dist. Ct., 128 F.3d 1283, 1289 (9th Cir. 1997). Equitable tolling may be granted when "extraordinary circumstances beyond a prisoner's control make it impossible to file the petition on time." Shannon v. Newland, 410 F. 3d 1083, 1089-1090 (9th Cir. 2005) (internal quotation marks and citations omitted). "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Holland, 560 U.S. at 651-652; Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). "[T]he threshold necessary to trigger equitable tolling under AEDPA is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F. 3d 1062, 1066 (9th Cir. 2002)(citation omitted). As a consequence, "equitable tolling is unavailable in most cases." Miles, 187 F. 3d at 1107.

Petitioner claims he should be entitled to equitable tolling because he had hired attorney H.

Russell Halpern to represent him in post-conviction proceedings, but Halpern abandoned him. He also argues he should be granted equitable tolling because he did not receive the state appellate court's opinion or his trial transcripts until September or October of 2015. The claims fail for several reasons.

Petitioner alleges he hired Halpern on May 16, 2014, but Halpern did nothing on his case and inexplicably let the statute of limitations expire without notifying Petitioner. He claims he did not become aware of this fact until August 2015 when an inmate inquired on his behalf. In response, Respondent has submitted a declaration from Halpern that Halpern had indeed worked on Petitioner's case. (Doc. 19 at 14.) Halpern states he had been hired in mid-2014 to investigate possible post-conviction proceedings concerning his conviction. (Doc. 19 at 14.) He states he had reviewed the appellate court decision and determined there were no viable issues for a federal writ of habeas corpus. (Doc. 19 at 15.) He states he explained this to Petitioner's daughter who was the person who had contacted him. (Doc. 19 at 15.) He also visited Petitioner in prison in July or August 2014 and notified him that he would not be filing a federal petition because he could find no grounds to do so. (Doc. 19 at 15.) He explained that if they were to discover new evidence that was not presented at trial, there might be a basis for filing a habeas petition. (Doc. 19 at 15.) Halpern states that Petitioner then informed him of a witness that could support his defense. (Doc. 19 at 15.) Halpern obtained the police reports and contacted Petitioner's daughter who stated that a woman named Monica Calderon might have witnessed Petitioner being forced into a car. (Doc. 19 at 15.) Halpern then made numerous attempts with Petitioner's daughter to obtain the correct number for the witness until he was finally able to obtain it. (Doc. 19 at 15.) On September 3, 2014, Halpern contacted Calderon who was in Texas and explained to her that he would need a declaration from her. (Doc. 19 at 19.) He attempted to contact Calderon again by phone and by registered mail, but his inquiries went unanswered. (Doc. 19 at 16.) Petitioner does not refute this. In fact, in his motion for stay, he concedes that "[a]s far as petitioner's delinquent filing goes he really has no extraordinary circumstance that block[ed] his ability to file a timely petition in this court." (Doc. 22 at 3.)

With respect to Petitioner's claim that he did not receive his trial transcripts and the appellate court opinion until September or October 2015, Respondent has submitted the declaration of Petitioner's appellate attorney, Jerome Wallingford. (Doc. 19 at 22.) Wallingford states that he sent a

letter to Petitioner on June 26, 2013, in both English and Spanish advising him that the appellate court had filed its opinion and rejected the appeal. (Doc. 19 at 23.) In addition, Wallingford included a copy of the appellate court opinion. (Doc. 19 at 23, 26, 28.) He further states that he advised Petitioner by letter on September 23, 2013, that the petition for review had been denied, thus concluding his representation. (Doc. 19 at 23, 30, 32.) Wallingford advised Petitioner that the deadline for filing a federal petition was mid-December 2014, and he made the trial transcripts available to him. (Doc. 19 at 23, 30, 32.) On January 12, 2014, Wallingford responded to Petitioner's inquiry about pursuing state habeas actions and informed him he could not represent him in state habeas, but he provided Petitioner with the names and addresses of several law schools to contact about possibly representing him. (Doc. 19 at 23, 30, 32.) Petitioner does not refute these representations, and as noted above, he concedes that he "really has no extraordinary circumstance" which blocked him from timely filing his federal petition. (Doc. 22 at 3.) Accordingly, Petitioner's arguments for equitable tolling in his opposition are meritless.

In his motion to amend, Petitioner concedes his claim for equitable tolling but now contends that he is actually innocent in light of "newly discovered evidence." He argues that he was not aware of witness Calderon having possibly seen him being pressured into the vehicle until he read Halpern's declaration in Respondent's Reply. This argument is duplicitous given the fact that it was Petitioner and his daughter who advised Halpern of the existence and whereabouts of Calderon in July or August 2014, which in turn caused Halpern to investigate Calderon. (Doc. 19 at 15.) The evidence cannot be "newly discovered" as it was clearly known to Petitioner in mid-2014, prior to the expiration of the limitations period. Therefore, he is not entitled to a later start date of the statute of limitations under 28 U.S.C. § 2241(d)(1)(D).

Even if the Court were to consider the evidence "newly discovered," it clearly would not have shown Petitioner was actually innocent of the murder. In McQuiggin v. Perkins, __ U.S. __, 133 S. Ct. 1924, 1928 (2013), the United States Supreme Court held that "actual innocence" could be an exception to the one-year limitation bar in the AEDPA:

> We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in Schlup and House, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the

threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup, 513 U.S., at 329; see House, 547 U.S., at 538 (emphasizing that the Schlup standard is "demanding" and seldom met). And in making an assessment of the kind Schlup envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. Schlup, 513 U.S., at 332.

The Supreme Court went on to detail that an "unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing, and, thus, "a court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of evidence [of actual innocence]." Id. at 1935 (quoting Schlup, 513 U.S. at 332); see also Lee v. Lampert, 653 F.3d 929, 932-933 (9th Cir. 2011) (en banc) ("a credible claim of actual innocence constitutes an equitable exception to AEDPA's limitations period, and a petitioner who makes such a showing may pass through the Schlup gateway and have his otherwise time-barred claims heard on the merits.")

The Schlup gateway, however, may only be employed when a petitioner "falls within the narrow class of cases . . . implicating a fundamental miscarriage of justice." Schlup, 513 U.S. at 314-315. The Supreme Court stated that "[t]he miscarriage of justice exception, we underscore, applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" McQuiggin, 133 S.Ct. at 1933 (quoting Schlup, 513 U.S. at 329). "The Supreme Court did not hold that a petitioner may invoke Schlup whenever he wants a trial do-over." Lee, 653 F.3d at 946 (Kozinski, J., concurring.) The rule announced in McQuiggin is not a type of equitable tolling, which provides for an extension of the time statutorily prescribed, but an equitable exception to § 2244(d)(1). McQuiggin, 133 S.Ct. at 1931.

Here, the alleged new evidence fails to meet Schlup's exacting standard. Had Calderon testified at trial to witnessing Petitioner being forced into a car at gunpoint by two men, the evidence at best would have corroborated Petitioner's testimony. It would not have altered the jury's verdict, because it would not have called into doubt the fact that Petitioner killed the victim. In addition, duress is not a defense to murder under California law. People v. Anderson, 28 Cal.4th 767, 775-76 (2002).

Petitioner fails to demonstrate any extraordinary circumstance stood in his way of timely filing

7

his federal petition and he fails to show that he acted diligently. He should not be granted equitable tolling. He further fails to show the evidence was newly discovered for purposes of § 2241(d)(1), and he fails to establish actual innocence such that the extraordinary exception set forth in McQuiggin and Schlup should be granted. The instant petition is untimely and should be dismissed.

V. Motion to Stay and Amend

Petitioner moves to stay proceedings in order to pursue his remedies with respect to his alleged discovery of "new evidence." He further asks that he be allowed to amend the petition to include a claim of actual innocence based on this new evidence. The Supreme Court has "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." McQuiggin, 133 S. Ct. at 1931. In any case, for the reasons discussed above, his claim of actual innocence fails. Moreover, the petition is untimely so amendment would be futile. Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995). And as previously discussed, Calderon's existence was clearly known to Petitioner since he advised his attorney of the fact in mid-2014. It is not "newly discovered." Further, Petitioner has not submitted any affidavits or declarations in support of his claim. He only speculates as to what Calderon witnessed and what her testimony would be. Thus, the Court does not find good cause to grant a stay of proceedings, see Rhines v. Weber, 544 U.S. 269 (2005), or to permit an amendment to the petition. Fed. R. Civ. P. 15(a); Bonin, 59 F.3d at 845. Therefore, the Court recommends Petitioner's motion be denied.

## RECOMMENDATION

Accordingly, the Court **RECOMMENDS**:

1. Respondent's motion to dismiss be **GRANTED**;
2. Petitioner's motion for stay and amendment be **DENIED**; and
3. The habeas corpus petition be **DISMISSED WITH PREJUDICE** for Petitioner's failure to comply with 28 U.S.C. § 2244(d)'s one year limitation period.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one days after being served with a copy, any party may file written objections with the Court

and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten <u>court</u> days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **September 13, 2017**     /s/ Jennifer L. Thurston
UNITED STATES MAGISTRATE JUDGE